PRERAK SHAH
Deputy Assistant Attorney General
United States Department of Justice
Environment & Natural Resources Division

HAYLEY A. CARPENTER (CA 312611)
Trial Attorney
U.S. Department of Justice
Environment and Natural Resources Division
P.O. Box 7611
Washington, D.C. 20044-7611
(202) 305-0242
hayley.carpenter@usdoj.gov

*Attorneys for Federal Defendants*

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
SAN FRANCISCO DIVISION

| | |
|---|---|
| CENTER FOR BIOLOGICAL DIVERSITY, *et al.,*<br><br>    Plaintiffs,<br><br>    v.<br><br>USDA APHIS WILDLIFE SERVICES, *et al.*,<br><br>    Federal Defendants. | Case No. 3:19-cv-05362-LB<br><br>**STIPULATED SETTLEMENT AGREEMENT** |

WHEREAS, Plaintiffs Center for Biological Diversity, Animal Legal Defense Fund, and Project Coyote/Earth Island Institute ("Plaintiffs"), brought claims pursuant to the Administrative Procedure Act ("APA"), 5 U.S.C. §§ 701-706, alleging violations of the National Environmental Policy Act ("NEPA"), 42 U.S.C. §§ 4321-4347, and its implementing regulations, 40 C.F.R. §§ 1500-1508, against the U.S. Department of Agriculture Animal and Plant Health Inspection Service-Wildlife Services ("APHIS-Wildlife Services") and Janet L. Bucknall in her official capacity as the Deputy Administrator of APHIS-Wildlife Services ("Federal Defendants") (Plaintiffs and Federal Defendants, together, "Parties");

WHEREAS, Plaintiffs' claims allege that APHIS-Wildlife Services is violating NEPA and the APA by failing or refusing to supplement its NEPA analysis regarding wildlife damage management activities in California's Sacramento District;

WHEREAS, Plaintiffs' position is that significant new circumstances and information have emerged since APHIS-Wildlife Services completed its 1994 Programmatic Environmental Impact Statement and its 1997 Environmental Assessment ("EA") and Finding of No Significant Impact ("FONSI");

WHEREAS, the Parties have engaged in good faith settlement negotiations in an effort to avoid the time and expense of further litigation;

WHEREAS, Plaintiffs and Federal Defendants believe therefore that it is in the interests of the Parties, and judicial economy to resolve the claims in this action without additional litigation;

NOW THEREFORE, it is stipulated and agreed to by Plaintiffs and Federal Defendants as follows:

1. <u>APHIS-Wildlife Services commits to the following</u>:

    a. By December 31, 2023, APHIS-Wildlife Services will issue a new Final Environmental Impact Statement ("FEIS") and Record of Decision ("ROD") that includes analysis of APHIS-Wildlife Services' Wildlife Damage Management activities in California's Sacramento District. If APHIS-Wildlife Services anticipates

that it will be unable to meet the deadline set out in this Paragraph, APHIS-Wildlife Services will confer with the Plaintiffs regarding the estimated time for completing the actions specified in the first sentence of this Paragraph.  Federal Defendants reserve the right to seek to modify the Stipulated Settlement Agreement ("Agreement") to extend time for completion of the actions specified in the first sentence of this Paragraph pursuant to Paragraph 6 below.  Plaintiffs reserve the right to oppose any such extension.

b. Excluding activities for the protection of health and human safety,[1] activities targeting invasive species (including feral swine and nutria), and activities on behalf of threatened and endangered species, between the date that this Agreement is executed and the date that the ROD is signed, APHIS-Wildlife Services agrees to the following interim measures within the Sacramento District:

   i. APHIS-Wildlife Services agrees not to use EPA-labeled pesticides targeting mammalian species;

   ii. APHIS-Wildlife Services agrees not to use EPA-label 56228-63 (DRC-1339 for bird control) in areas of the Sacramento District occupied by the state threatened tricolored blackbird (*Agelaius tricolor*);

   iii. APHIS-Wildlife Services agrees to use only non-lead ammunition for all wildlife damage management activities, except when dispatching animals for which carcasses will be retrieved from the environment, subject to a 60-day transition period from the date of execution of this Agreement;

   iv. APHIS-Wildlife Services agrees not to use body-gripping traps in the portion of the Sacramento National Wildlife Refuge Complex that is within the

---

[1] If APHIS-Wildlife Services undertakes activities for health and human safety that implicate any of the interim measures, APHIS-Wildlife Services agrees to provide Plaintiffs with a fiscal year report of the number and circumstances surrounding such activities by January 1 of the next fiscal year.

STIPULATED SETTLEMENT AGREEMENT                                                                             3
*Center for Biological Diversity, et al. v. U.S. Dep't of Agriculture APHIS Wildlife Servs., et al.*,
No. 3:19-cv-05362-LB

Sacramento District, National Parks, Wilderness Areas, and Wilderness Study Areas;

v. APHIS-Wildlife Services agrees not to conduct aerial operations in Wilderness Areas and Wilderness Study Areas;

vi. APHIS-Wildlife Services agrees to abide by the recommended gray wolves mitigation measures provided in the April 15, 2014, concurrence letter by the U.S. Fish and Wildlife Service ("FWS") for APHIS-Wildlife Services' wildlife damage management activities in California until such document is superseded;

vii. APHIS-Wildlife Services agrees that all traps it sets will be checked daily;

viii. APHIS-Wildlife Services agrees to use best efforts to document cooperator-employed nonlethal predator damage management methods in its electronic recordkeeping system for operational activities;

ix. APHIS-Wildlife Services agrees not to engage in lethal beaver damage management in natural lakes, rivers, and streams within the Critical Habitat, as set forth by FWS, of the southwestern willow flycatcher, tidewater goby, Chinook salmon, Coho salmon, and Steelhead, except where beavers have blocked culverts, water control boxes, or other transportation crossings to the extent that fish passage is prevented.

x. APHIS-Wildlife Services agrees not to engage in debris management within Critical Habitat, as set forth by FWS, of the southwestern willow flycatcher, tidewater goby, Chinook salmon, Coho salmon, and Steelhead, including dam removal, except where the debris constitutes an obstruction to fish passage; and

xi. APHIS-Wildlife Services agrees not to implement certain non-lethal methodologies (including but not limited to pond levelers and flow devices)

that may impact water abundance or site character at fish rearing sites for Chinook salmon, Coho salmon, Steelhead, Green sturgeon and Pacific eulachon.

2. <u>Definitions</u>.  The parties agree that the following terms used in this Settlement Agreement have the following definitions:

   a. The term "body-gripping trap" is defined as a trap that grips the mammal's body or body part, including, but not limited to, steel-jawed leghold traps, padded-jaw leghold traps, conibear traps, and snares.  Cage and box traps, nets, suitcase-type live beaver traps, and common rat and mouse traps shall not be considered body-gripping traps.

   b. The term "in areas occupied by gray wolves" as it appears in the April 15, 2014, concurrence letter from FWS for APHIS-Wildlife Services' wildlife damage management activities in California is defined as, consistent with the consultation by FWS, areas where wolves are known to exist through reports and verification by the FWS and/or the California Department of Fish and Wildlife ("CDFW").

   c. The term "Sacramento District" is defined as areas within the boundaries of the following counties:  Colusa, El Dorado, Lake, Marin, Napa, Placer, Sacramento, Solano, Sonoma, and Yolo.

   d. The term "protection of health and human safety" is defined as activities, in response to a request received from any peace officer, to include, but not limited to, CDFW-Law Enforcement Division, California Highway Patrol, U.S. Fish and Wildlife Law Enforcement, state and county park rangers, county sheriff offices, city police offices, and city/county animal control offices, to wildlife that demonstrate aggressive action that has resulted in physical contact with a human or exhibits an immediate threat to public health and safety, given the totality of the circumstances.  "Immediate threat" refers to wildlife that exhibits one or more aggressive behaviors directed toward a person that is not reasonably believed to be due to the presence of responders.

       "Public safety" includes situations where wildlife remains a threat despite efforts to allow or encourage it through active means to leave the area.

    e. The term "activities on behalf of threatened and endangered species" is defined as activities conducted at the direction of, and with the concurrence of, FWS or CDFW on behalf of federally or state listed threatened or endangered species.

    f. The term "natural lakes, rivers, and streams" is defined as waterways unaltered by man. Waterways with leveed, riprapped, grouted, concreted, or otherwise man-made bounds shall not be considered natural lakes, rivers, or streams.

3. <u>Attorneys' Fees and Costs</u>. The Parties have agreed to settle any and all of Plaintiffs' claims for attorneys' fees, costs, and expenses associated with this litigation for a lump sum of $5,552.28. This Agreement represents the entirety of the undersigned Parties' commitments with regard to settlement of claims for attorneys' fees, costs, and expenses.

4. <u>Modification</u>. This Agreement may be modified by written stipulation between the Parties. In the event that either party seeks to modify the terms of this Agreement, the party seeking the modification will confer at the earliest possible time with the other party.

5. <u>Subsequent NEPA Challenges</u>. Nothing in this Agreement precludes any challenge by Plaintiffs to the validity or sufficiency of the NEPA analysis completed pursuant to Paragraph 1 above. Such challenges shall be made only upon (1) completion of the entire NEPA process following the issuance of APHIS-Wildlife Service's FEIS and ROD, and (2) Plaintiffs' exhaustion of any and all available administrative appeal opportunities. For any such challenge, judicial review will be conducted only to the extent allowed by, and pursuant to, the judicial review provisions of the APA.

6. <u>Dispute Resolution</u>. In the event of a dispute among the Parties concerning the interpretation or implementation of any aspect of this Stipulation, the disputing Party shall provide the other Party with a written notice outlining the nature of the dispute and requesting informal negotiations. The Parties shall meet and confer to attempt to resolve the dispute. If the

STIPULATED SETTLEMENT AGREEMENT     6
*Center for Biological Diversity, et al. v. U.S. Dep't of Agriculture APHIS Wildlife Servs., et al.*,
No. 3:19-cv-05362-LB

Parties cannot reach an agreed-upon resolution after 60 days following receipt of a written notice requesting informal negotiations or such longer time agreed to by the Parties, any Party may move the Court to resolve the dispute.  No motion or other proceeding seeking to enforce this Agreement or for contempt of court shall be properly filed unless the Party seeking to enforce this Agreement has followed the procedure set forth in this Paragraph, and the Party believes there has been noncompliance with an order of the Court.  In addition, this Agreement shall not, in the first instance, be enforceable through a proceeding for contempt of court.

7. Representative Authority.  The undersigned representatives of Plaintiffs and Federal Defendants certify that they are fully authorized by the party or parties whom they represent to enter into the terms and conditions of this Agreement and to legally bind those parties to it.

8. Compliance with Other Laws.  Nothing in this Agreement shall be interpreted as, or shall constitute, a commitment or requirement that Federal Defendants obligate or pay funds, or take any other actions in contravention of the Anti-Deficiency Act, 31 U.S.C. § 1341, or any other applicable law.  Nothing in this Agreement shall be construed to deprive a federal official of authority to revise, amend, or promulgate regulations, or to amend or revise land and resource management plans.  Nothing in this Agreement is intended to, or shall be construed to, waive any obligation to exhaust administrative remedies; to constitute an independent waiver of the United States' sovereign immunity; to change the standard of judicial review of federal agency actions under the APA; or to otherwise extend or grant this Court jurisdiction to hear any matter, except as expressly provided in the Agreement.

9. Offsetting debts.  Under 31 U.S.C. §§ 3711, 3716; 26 U.S.C. § 6402(d); 31 C.F.R. §§ 285.5, 901.3; and other authorities, the United States will offset against the payment made pursuant to this Agreement Plaintiffs' delinquent debts to the United States, if any.  *See Astrue v. Ratliff*, 560 U.S. 586 (2010).

10. <u>Mutual Drafting and Other Provisions</u>.

    a. It is hereby expressly understood and agreed that this Agreement was jointly drafted by Plaintiffs and Federal Defendants.  Accordingly, the Parties hereby agree that any and all rules of construction, to the effect that ambiguity is construed against the drafting party, shall be inapplicable in any dispute concerning the terms, meaning, or interpretation of the Agreement.

    b. This Agreement contains all of the agreements between Plaintiffs and Federal Defendants, and is intended to be and is the final and sole agreement between Plaintiffs and Federal Defendants concerning the complete and final resolution of Plaintiffs' claims.  Plaintiffs and Federal Defendants agree that any other prior or contemporaneous representations or understandings not explicitly contained in this Agreement, whether written or oral, are of no further legal or equitable force or effect.  Any subsequent modifications to this Agreement must be in writing, and must be signed and executed by Plaintiffs and Federal Defendants.

    c. This Agreement is the result of compromise and settlement, and does not constitute an admission, implied or otherwise, by Plaintiffs or Federal Defendants to any fact, claim, or defense on any issue in this litigation.  This Agreement has no precedential value and shall not be used as evidence either by Federal Defendants or Plaintiffs in any other litigation except as necessary to enforce the terms of this Agreement.  Federal Defendants do not waive any defenses they may have concerning the claims settled under this Agreement.

11. <u>Force Majeure</u>.  The Parties understand that notwithstanding their efforts to comply with the commitments contained herein, events beyond their control may prevent or delay such compliance.  Such events may include natural disasters as well as unavoidable legal barriers or restraints, including those arising from actions of persons or entities that are not party to this Agreement.

12. <u>Dismissal</u>.  Concurrently with this Agreement, the Parties shall file a stipulation of voluntary dismissal of this action.  That stipulation will request that the Court retain jurisdiction to oversee compliance with the terms of this Agreement and to resolve any disputes arising under this Agreement and any motions to modify any of its terms.  *See Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375 (1994).

13. <u>Effective Date</u>.  The terms of this Agreement shall become effective upon execution of this Agreement.  The Parties agree that this Agreement may be executed in one or more counterparts, each of which shall constitute an original, and all of which, taken together, shall constitute the same instrument.  Facsimile or scanned signatures submitted by electronic mail shall have the same effect as an original signature in binding the Parties.

Respectfully submitted this 6th day of April, 2020.

/s/ *Collette L. Adkins (with permission on April 6, 2020)*
COLLETTE L. ADKINS, MN Bar No. 035059X
(*pro hac vice*)
Center for Biological Diversity
P.O. Box 595
Circle Pines, MN 55014-0595
Phone: (651) 955-3821
Fax: (510) 844-7150
cadkins@biologicaldiversity.org

CRISTINA R. STELLA (CA Bar No. 305475)
Animal Legal Defense Fund
6439 E. Maplewood Ave.
525 E. Cotati Ave.
Cotati, CA 94931-4091
Phone: (707) 795-2533 ext. 1055
Fax: (707) 795-7280
cstella@aldf.org

*Attorneys for Plaintiffs*

PRERAK SHAH
Deputy Assistant Attorney General
United States Department of Justice
Environment & Natural Resources Division

/s/ *Hayley A. Carpenter*
HAYLEY A. CARPENTER, CA Bar No. 312611
Trial Attorney
Natural Resources Section
PO Box 7611
Washington, DC 20044-7611
(202) 305-0242
hayley.carpenter@usdoj.gov

*Attorneys for Defendants*